**MORGAN, LEWIS & BOCKIUS LLP**
John A. Vassallo, III (JV6019)
101 Park Avenue
New York, NY 10178-0600
Telephone: (212) 309-6000
Facsimile: (212) 309-6001
john.vassallo@morganlewis.com

**MORGAN, LEWIS & BOCKIUS LLP**
Brian W. Shaffer (*pro hac vice* to be filed)
Jose M. Sabalbaro (*pro hac vice* to be filed*)*
1701 Market Street, Philadelphia, PA 19130
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
brian.shaffer@morganlewis.com
jose.sabalbaro@morganlewis.com

Counsel for Plaintiff Andrew Hohns

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW HOHNS,<br><br>    Plaintiff,<br><br>-v.-<br><br>MARINER INVESTMENT GROUP, LLC<br><br><br>    Defendant. | Civ. No_____<br><br>**COMPLAINT AND PETITION TO COMPEL ARBITRATION** |

**COMPLAINT AND PETITION TO COMPEL ARBITRATION PURSUANT TO THE DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201(a), AND SECTION 4 OF THE FEDERAL ARBITRATION ACT, 9 U.S.C. § 4**

**NATURE OF THE ACTION**

Petitioner Andrew Hohns ("Petitioner" or "Hohns"), by and through his undersigned

counsel, brings this Complaint and Petition pursuant to the Declaratory Judgment Act, 28 U.S.C.

§ 2201(a), and Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4 ("FAA § 4"). Hohns seeks a declaration that his current contract dispute with Mariner Investment Group, LLC ("Respondent" or "Mariner") concerning the legal meaning and effect of certain terms and conditions in the parties' Mariner-Hohns Buyout Option Agreement, made as of March 13, 2012 (the "Buyout Option Agreement"), should be submitted to arbitration in accordance with the arbitration provision set forth in section 7 of the Buyout Option Agreement ("Arbitration Provision"). Relatedly, and pursuant to FAA § 4, Hohns seeks to compel Mariner to arbitrate the parties' dispute pursuant to the Demand for Arbitration that Hohns filed with JAMS New York on September 17, 2019, attached hereto as **Exhibit 1** ("JAMS Demand"). Specifically, as detailed in the JAMS Demand, the parties disagree as to whether the phrase "fair market value of the Mariner Revenue Share at such time" found in the Buyout Option Agreement refers only to assets that are actually in existence at such time as the Buyout Option Agreement's Buyout Trigger has occurred (as Hohns contends), or whether it also contains a component of future revenue on unspecified funds that Hohns might someday in the future manage through products or other ventures that might possibly be developed, based on potential commitments, goodwill, or otherwise (as Mariner contends). The parties agreed to arbitrate such disputes before "an independent professional arbitration association in New York" and arbitrator(s) with "significant arbitration experience related to the securities industry." *See* Buyout Option Agreement,[1] at §7. In support of his Complaint and Petition, Hohns alleges as follows:

---

[1] The Buyout Option Agreement is attached to the **JAMS Demand** as **Exhibit A** thereto.

## PARTIES AND JURISDICTION

1. The Court has subject matter jurisdiction over this Complaint and Petition pursuant to 28 U.S.C. § 1332(a)(1), requiring complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000.00, exclusive of interest and costs.

2. At all relevant times, including upon the commencement of this Complaint and Petition, Petitioner Hohns has been a citizen of the Commonwealth of Pennsylvania, and Petitioner currently resides in Philadelphia, Pennsylvania.

3. Respondent Mariner is not a citizen of the Commonwealth of Pennsylvania and complete diversity therefore exists between the parties. Mariner is an LLC whose citizenship is determined by the citizenship of its members. *See, e.g., Bayerische Landesbank v. Aladdin Cap. Mgmt., LLC*, 692 F.3d 42, 49 (2d Cir. 2012). Mariner's sole member is MIG Holdings, LLC, which is a limited liability company formed under the laws of Delaware. MIG Holdings, LLC is controlled by OAM Capital, LLC, which is a limited liability company formed under the laws of Delaware. OAM Capital, LLC is controlled by OAM Holdings, LLC, which is a limited liability company formed under the laws of Delaware. OAM Holdings, LLC is controlled by ORIX Global Asset Management, LLC, which is a limited liability company formed under the laws of Delaware. ORIX Global Asset Management, LLC is controlled by ORIX Opco Holdings, LLC, which is a limited liability company formed under the laws of Delaware. ORIX Opco Holdings, LLC is controlled by ORIX Capital Markets, LLC, which is a limited liability company formed under the laws of Delaware. ORIX Capital Markets, LLC is controlled by ORIX Corporation USA, which is a Delaware corporation. ORIX Corporation USA is a wholly-owned subsidiary of ORIX Corporation (ORIX Kabushiki Kaisha), which is a corporation organized in Japan and whose principal place of business is not located in the Commonwealth of Pennsylvania. Upon information and belief, the headquarters and corporate nerve center of the Japanese corporation

3

ORIX Corporation (ORIX Kabushiki Kaisha) is not located in the Commonwealth of Pennsylvania.

4. The amount in controversy exceeds $75,000.00, exclusive of interest and costs, because the disputed value in the underlying arbitration that Petitioner seeks to compel is in the millions of dollars. *See* Ex. 1, at ¶ 35; *see also Doctors' Assocs., Inc. v. Hamilton*, 150 F.3d 157, 160-61 (2d Cir. 1998) (instructing that courts must "look through" a petition to compel "to the possible award resulting from the desired arbitration," and stating that amount in controversy is the difference "between winning and losing the underlying arbitration").

5. The Court has personal jurisdiction over Mariner, *inter alia*, based on Mariner's consent to New York arbitration of any disputes or controversies arising out of the Buyout Option Agreement. *See* Buyout Option Agreement, at § 7 ("Any controversy or dispute between the parties arising out of any of the terms or conditions of this [Buyout Option] Agreement shall be submitted to an independent professional arbitration association in New York."); *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 979 (2d Cir. 1996). Further, Mariner has multiple office locations in New York, and its address for any Notices to be sent under the parties' Buyout Option Agreement is 500 Mamaroneck Avenue, Harrison, New York, 10528. *See* Buyout Option Agreement, at § 4. Mariner has sufficient minimum contacts with New York.

6. Venue is properly in this District pursuant to 28 U.S.C. § 1391(b) for the same reasons demonstrating that the Court has personal jurisdiction over Mariner.

7. The Buyout Option Agreement contains the following Arbitration Provision:

> <u>Arbitration</u>. Any controversy or dispute between the parties arising out of any of the terms or conditions of this Agreement shall be submitted to an independent professional arbitration association in New York. Any arbitrator(s) selected must have significant arbitration experience relating to the securities industry. The parties shall select an arbitrator by mutual agreement within thirty (30) days of the date of the demand for arbitration. If the Parties are unable to agree on the selection of an

4

arbitrator within such time, each Party shall select an arbitrator and the two arbitrators shall select a third arbitrator. Any of the two of the three arbitrators that agree shall decide the matter. The cost of the arbitration shall be borne equally by the Parties, unless the arbitrator(s) order otherwise. The arbitration shall be binding with no right of appeal.

Buyout Option Agreement, at §7.

8. The Federal Arbitration Act applies to the Arbitration Provision of the Buyout Option Agreement:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

9. Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, authorizes this Complaint and Petition:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default.

9 U.S.C. § 4.

## FACTUAL ALLEGATIONS

### The Parties' Business Relationship and Relevant Contracts

10. Hohns and Mariner are parties to an infrastructure fund management platform, the conduct of which is primarily governed by the terms of a Sponsorship Agreement effective as of March 13, 2012 ("Sponsorship Agreement"), an Employment Agreement effective as of March 13,

5

2012 ("Employment Agreement"), and the Buyout Option Agreement. The Sponsorship Agreement is attached to the **JAMS Demand** as **Exhibit B** thereto. The Employment Agreement is attached to the **JAMS Demand** as **Exhibit C** thereto. Hohns and Mariner are each parties to these three agreements.

11. A principle objective of the parties' business under the Sponsorship Agreement is to engage in infrastructure-related investment activities relating to the primary investment strategy of investment in securitizations of project finance or other infrastructure-related credit assets. *See* Sponsorship Agreement, pp. 1, 2. Under the Sponsorship Agreement, Hohns is President and Chief Executive Officer of Mariner Infrastructure Investment Management LLC ("MIIM"), an entity specifically established to facilitate the parties' business, and which also is party to the Sponsorship Agreement. *See id.* at p. 3, § 2.

12. In his capacity as President and Chief Executive Officer, Hohns is responsible for developing and managing certain "Specified Funds," the purposes of which are to enable the parties' credit-related infrastructure investment strategies. *See id.* at pp. 3-4, §§ 2, 3.

13. For its part, Mariner is obligated to provide, among other services, "internal accounting, human resources, information technology . . . and all other back office functions"; "meeting space"; "compliance services"; and assistance with development of investor correspondence. *See id.* at p. 7, § 6.

### The Parties Have a Dispute Concerning the Terms and Conditions of the Buyout Option Agreement

14. The parties entered into the Buyout Option Agreement contemporaneously with the Sponsorship Agreement.

6

15.     The Buyout Option Agreement embodies the parties' "desire to set forth their agreement regarding certain key terms and conditions regarding the sale and buyout options of Hohns and Mariner." *See* Buyout Option Agreement, at p. 1.

16.     Section 1 of the Buyout Option Agreement, "Defined Terms," makes clear that "[c]apitalized terms used but not defined herein have the meanings assigned to them in the Sponsorship Agreement." *Id.* at p. 1, § 1.

17.     The parties' current dispute arises out of their controversy over the meaning of contractual language used in section 2 of the Buyout Option Agreement, including terms that are defined in the Sponsorship Agreement.

18.     Section 2 of the Buyout Option Agreement is the parties' "Buyout Option" provision, which specifically states as follows:

> Buyout Option. Upon the occurrence of any Buyout Trigger, Hohns shall have the right to purchase (the **"Buyout Option"**), in whole but not in part, Mariner's entire interest in MIIM, either through the purchase of Mariner's entire interest in MIIM or through the purchase of all contracts and rights to management fees, performance fees and allocations to which MIIM is entitled, upon payment to Mariner of the fair market value of the Mariner Revenue Share at such time. Such fair market value shall be determined by an independent nationally recognized expert evaluator of investment management businesses mutually selected by the Parties, which expert shall have experience in valuing investment fund managers. If Mariner and Hohns cannot agree on an evaluator, each shall choose an evaluator, and the two evaluators shall select a third evaluator with the foregoing qualifications, and any two of the three evaluators that agree shall decide the fair market value of the Mariner Revenue Share. If the three evaluators do not agree, the fair market value of the Mariner Revenue Share shall be the average of the three values determined by the evaluators. Hohns shall have ninety (90) days after the occurrence of the applicable Buyout Trigger to exercise, by written notice to Mariner, such Buyout Option. Hohns and Mariner shall act in good faith to complete the sale and purchase transaction pursuant to the exercise of the Buyout Option within 180 days following Hohns's exercise of such Buyout Option.

19.     "Buyout Trigger" is a defined term in section 1 of the Buyout Option Agreement and specifies the following circumstances triggering Hohns's Buyout Option:

7

(a) the expiration of a period of sixty (60) months following the date of the first closing of the Initial Fund, or

(b) the occurrence of a Key Executive Change, or

(c) the termination without Cause of Hohns as President and CEO of MIIM, or

(d) the resignation with Good Reason by Hohns as President and CEO of MIIM, or

(e) a material breach by Mariner of any of its obligations as set forth in the Sponsorship Agreement, which remains uncured for a period of sixty (60) days following the date on which written notice of the breach was provided, or

(f) bankruptcy or insolvency of Mariner, or

(g) each and any applicable event as described in Section 3.

Although subsection 1(a) is the operative Buyout Trigger here, the nature of the other Buyout Triggers is relevant to the parties' respective arguments, supports Hohns's position, and undermines Mariner's.

20. Section 2 of the Buyout Option Agreement establishes a number of rights, requirements, and procedures concerning Hohns's option to purchase Mariner's interest in MIIM:

a. The timing upon which Hohns may elect to exercise his right to purchase Mariner's interest in MIIM, by reference to the occurrence of the "Buyout Triggers" defined by section 1 of the Buyout Option Agreement;

b. The extent of Mariner's interest in MIIM that must be considered for purchase if Hohns exercises his purchase right, *i.e.*, Mariner's "entire" interest;

c. The qualitative measure of the consideration that Hohns must exchange for Mariner's entire interest in MIIM. The qualitative measure of consideration in part is fixed by reference to the Sponsorship Agreement's defined contractual term "Mariner Revenue

Share," which term includes other defined contractual terms and conditions as set forth below. The qualitative measure of consideration is the contractual condition that Hohns, to obtain Mariner's interest in MIIM, will pay Mariner "the fair market value of the Mariner Revenue Share at such time" as the Buyout Trigger occurs.

   d. The record date at which point in time the qualitative measure is to be calculated, *i.e.*:

> ***Upon the occurrence of any Buyout Trigger***, Hohns shall have the right to purchase (the **"Buyout Option"**), in whole but not in part, Mariner's entire interest in MIIM either through the purchase of Mariner's entire interest in MIIM or through the purchase of all contracts and rights to management fees, performance fees and allocations to which MIIM is entitled, upon payment to Mariner of the fair market value of the Mariner Revenue Share ***at such time*** [as the applicable Buyout Trigger has occurred]. (Emphasis added.)

   e. A mechanism for, after resolution of the threshold legal issue presented in the JAMS Demand and Hohns's deemed exercise of the Buyout Option, mathematically quantifying the value of the qualitative measure of the consideration that Hohns will pay for Mariner's interest in MIIM. The mechanism provides for one or more "expert evaluators" to perform that mathematical quantification. If Hohns and Mariner cannot agree on one "expert evaluator," they shall each select an evaluator, and those two evaluators will choose a third evaluator. Two of the three evaluators would need to agree on the quantification, and if such agreement could not be reached, the quantification would be an average of the three calculated values.

   f. A preliminary commitment by the parties to negotiate in good faith toward consummation of a sale and purchase transaction concerning Mariner's interest in MIIM, which good faith obligation would last for 180 days following Hohns's exercise of his right to purchase the interest.

9

**Mariner Refuses to Acknowledge the Applicability of the Buyout Agreement's Arbitration Provision to the Parties' Dispute**

21.     As noted above, the Buyout Trigger applicable to the parties' dispute is section 1(a), "the expiration of a period of sixty (60) months following the date of the first closing of the Initial Fund." Prior to the occurrence of the applicable Buyout Trigger, but in anticipation thereof, Hohns, Mariner, and their representatives initiated discussions to explore the possibility that the parties to the Sponsorship Agreement might reconstitute their business relationship through a new contractual agreement.

22.     Part of those discussions included discussion about the possible valuation of Mariner's interest in MIIM, and the parties have, on multiple occasions, exchanged their positions regarding a possible valuation of that interest. The parties have been unable to reach agreement. The parties dispute the legal meaning of the terms in the Buyout Option Agreement and Sponsorship Agreement that establish the qualitative component of the Buyout Option valuation.

23.     IIFC Fund I closed on December 12, 2013, and therefore the applicable Buyout Trigger occurred on December 12, 2018 (the "Record Date"). On or about March 11, 2019, prior to the occurrence of the expiration of the 90-day time-frame to exercise the Buyout Option, the parties entered into an agreement tolling the 90-day period while the parties endeavored to negotiate the terms of a potential new relationship. In addition, the parties have stipulated and agreed that if and when they are unable to reach agreement concerning a potential new relationship and the tolling agreement is terminated by one of them, Hohns will have 90 days from then to exercise the Buyout Option.

24.     Because the parties are still in negotiations and not in agreement as to the legal meaning of the terms in the Buyout Option Agreement and Sponsorship Agreement that establish the qualitative component of the Buyout Option valuation, the tolling agreement between them is

still in effect. Hohns is not yet obligated to exercise the Buyout Option, and has not yet exercised it, but intends to do so. Accordingly, section 2 of the Buyout Option Agreement is not yet operative.

25. A real and current dispute has crystallized between the parties concerning the contractual conditions regarding Hohns's payment in connection with the Buyout Option. The parties disagree on what components constitute the qualitative measure of consideration that Hohns would pay for Mariner's interest in MIIM, which is a threshold question of contract interpretation that must be decided before, among other things, the measure could be quantified through the expert evaluator mechanism found in section 2 of the Buyout Option Agreement.

26. Specifically, as detailed in the JAMS Demand, Hohns's position is that, consistent with the parties' contractual terms and conditions, the qualitative measure of consideration to be paid for Mariner's interest in MIIM factors only projected future revenues on assets that are actually under management at such time as any of the Buyout Option Agreement's Buyout Triggers are deemed to occur. The measure of consideration is contractually defined and based solely on "the fair market value of the Mariner Revenue Share" earned from "Specified Funds" actually in existence and under operation "at such time" as a Buyout Trigger is deemed to occur. Nothing in the parties' contracts indicates that anything more is included in the qualitative measure of consideration that would be paid for Mariner's interest in MIIM. The qualitative measure of consideration does <u>not</u> include projected future revenues associated with either (a) investments that had not yet been made and/or (b) investment funds that had not yet come into existence, in both cases at such time of any Buyout Trigger.

27. Mariner however, contends that, beyond the Specified Funds actually in existence at such time, the qualitative measure of consideration also contains a component of projected

future revenues associated with either (a) investments that had not yet been made and/or (b) investment funds that had not yet come into existence, in both cases at such time of any Buyout Trigger.[2]

28. This threshold contractual interpretation dispute changes the amount of consideration that Hohns is to pay in connection with the Buyout Option by more than $75,000.

29. The parties' controversy indisputably is one over the contractual interpretation and meaning of terms and conditions set forth in the Buyout Option Agreement and, by extension, the Sponsorship Agreement. This dispute falls squarely within the scope of the parties' Arbitration Provision (section 7 of the Buyout Option Agreement), which is the only arbitration agreement contained in the Buyout Option Agreement. Acting under the parties' express authority conferred by section 7, the JAMS Panel must decide the threshold legal issues of contract interpretation and meaning concerning the qualitative measure of consideration to be paid for Mariner's interest in MIIM before, among other things, any "expert evaluator" may mathematically quantify that interest. That is the order of operations both contemplated and authorized by the Buyout Option Agreement.

30. On September 17, 2019, pursuant to section 7 of the Buyout Option Agreement, Hohns initiated an arbitration in New York, New York, by filing a Demand for Arbitration with JAMS. JAMS is an independent professional arbitration association in New York. Although no arbitrators have, as yet, been appointed in the matter, JAMS New York has at its disposal arbitrators with significant arbitration experience related to the securities industry.

---

[2] Section 7(d) of the IIFC II-A GP, LLC Agreement, attached to the **JAMS Demand** as **Exhibit D** thereto, reflects the parties' agreement that Fund IIFC II-A will not be factored in calculating the "fair market value of Mariner Revenue Share at such time" of the Buyout Trigger, when the Buyout Option is exercised, assuming the Panel accepts Hohns's contractual interpretation.

31.     Mariner has repeatedly advised Hohns and his counsel that Mariner believes the parties' dispute is one that arises under, and is solely resolvable by, section 2, not section 7 of the Buyout Option Agreement. As explained herein, Hohns believes Mariner's position is plainly incorrect.

32.     Accordingly, this Complaint and Petition are necessary due to Mariner's refusal to submit to the JAMS New York arbitration filed by Hohns the parties' contractual interpretation dispute, in accordance with the express, unambiguous, and applicable Arbitration Provision in the Buyout Option Agreement. The parties' contractual interpretation controversy is well within the scope of section 7, which plainly requires that "[a]ny controversy or dispute between the parties arising out of any of the terms or conditions of this [Buyout Option] Agreement shall be submitted to an independent professional arbitration association in New York."

## CLAIMS AGAINST MARINER

### First Claim

### (Declaratory Judgment Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a))

33.     Hohns incorporates by reference and realleges paragraphs 1 through 32 of this Complaint and Petition as if fully set forth herein.

34.     The Declaratory Judgment Act, 28 U.S.C. § 2201(a), in relevant part provides the following right to relief:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

35. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), Hohns asks the Court to declare that:

 a. The parties' dispute is a controversy over the meaning of terms and conditions set forth in the Buyout Option Agreement, and that pursuant to their contract, the parties agreed to submit this dispute to binding and final arbitration pursuant to Section 7 of the Buyout Option Agreement.

 b. The valuation evaluation set forth in Section 2 of the Buyout Option Agreement is neither an arbitration provision nor applicable to the parties' current dispute concerning the contractual interpretation and meaning of certain terms and conditions in the Buyout Option Agreement; and

 c. To the extent Mariner disagrees with Hohns's interpretation of the phrase "the fair market value of the Mariner Revenue Share at such time" found in the Buyout Option Agreement, their disagreement is properly before JAMS New York pursuant to the Demand for Arbitration filed by Hohns on September 17, 2019.

36. Declaratory relief is appropriate here. The parties' dispute is ripe for adjudication and is an actual, definite, concrete and substantial controversy that is justiciable and of sufficient immediacy to justify the relief sought. The requested declaratory relief will serve a useful purpose in clarifying or settling the legal issues between the parties concerning the effect and operation of section 7 of the Buyout Option Agreement; will finalize the controversy and offer relief from uncertainty; is not being used merely for procedural fencing or a race to *res judicata*; will not increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and there is no better or more effective remedy. *See, e.g., N.Y. v. Solvent Chem. Co.*, 664 F.3d 22, 26 (2d Cir. 2011).

## Second Claim

### (Order Compelling Arbitration Pursuant to the Federal Arbitration Act, 9 U.S.C. § 4)

37. Hohns incorporates by reference and realleges paragraphs 1 through 36 of this Complaint and Petition as if fully set forth herein.

38. Hohns has filed a Demand for Arbitration with JAMS New York seeking to arbitrate the parties' dispute described herein pursuant to the parties' Arbitration Provision set forth in section 7 of the Buyout Option Agreement.

39. Mariner refuses to arbitrate the parties' contractual interpretation dispute pursuant to the JAMS Demand.

40. As set forth above, the dispute is a controversy that "aris[es] out of any of the terms or conditions of" the Buyout Option Agreement, and Hohns has been sufficiently aggrieved by Mariner's refusal to arbitrate the dispute pursuant to section 7 of the Buyout Option Agreement.

41. Section 4 of the Federal Arbitration Act thus entitles Hohns to an order compelling Mariner to arbitrate the parties' dispute pursuant to the Demand for Arbitration filed by Hohns on September 17, 2019.

### RELIEF REQUESTED

WHEREFORE, the Petitioner Hohns respectfully requests:

(i)    the declaratory relief sought by the First Claim;

(ii)   the order to compel arbitration sought by the Second Claim;

(iii)  an award for court costs, disbursements, attorney's fees, and any other expenditures; and

(iv)   such other relief as the Court deems just and proper under the circumstances.

Dated: September 17, 2019
New York, New York

<u>S/*John A. Vassallo, III*</u>
**MORGAN, LEWIS & BOCKIUS LLP**
John A. Vassallo, III (JV6019)
101 Park Avenue
New York, NY 10178-0600
Telephone: (212) 309-6000
Facsimile: (212) 309-6001
john.vassallo@morganlewis.com

**MORGAN, LEWIS & BOCKIUS LLP**
Brian W. Shaffer (*pro hac vice* to be filed)
Jose M. Sabalbaro (*pro hac vice* to be filed*)*
1701 Market Street, Philadelphia, PA 19130
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
brian.shaffer@morganlewis.com
jose.sabalbaro@morganlewis.com

*Counsel for Plaintiff Andrew Hohns*